IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**SHELITHA VANESSA THOMAS**                                                                                          **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO.: 2:20-cv-123-TBM-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Shelitha Vanessa Thomas brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits. This matter is now before the Court on Defendant's Motion to Affirm the Commissioner's Decision [13]. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends that the Motion to Affirm the Commissioner's Decision [13] be granted in part and denied in part and that this matter be remanded for further consideration.

## PROCEDURAL HISTORY

On January 9, 2018, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she had been disabled since December 29, 2017, due to open heart surgery, congestive heart failure, IGA deficiency, hypertension, gastritis, and pulmonary hypertension. (Administrative Record [11] at 63). The agency denied her claim, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Prior to the hearing, Plaintiff was referred for psychiatric evaluation by her cardiologist after complaining of depression and anxiety. ([11] at 611-14). On August 19, 2019, the ALJ held a hearing reviewing all of Plaintiff's alleged impairments, including her newly-acknowledged mental impairments of depression and anxiety, and issued a decision finding that Plaintiff was not disabled. ([11] at 12).

1

Plaintiff appealed the ALJ's decision to the Appeals Counsel. On May 12, 2020, the Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([11] at 5-8). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her August 19, 2019, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 29, 2017. ([11] at 17). At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease, hypertension, mild degenerative joint disease, depression, and anxiety. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([11] at 17).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[3] except that she is limited to simple, routine, repetitive tasks." ([11] at 20-27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([11] at 27). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ found that Plaintiff was not disabled. ([11] at 28-29).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises three grounds for relief:

(1) The ALJ erred by relying on lay analysis to formulate the mental RFC, without investigating the facts "both for and against granting benefits."

(2) The ALJ erred when she found the opinion of Plaintiff's treating cardiologist "persuasive" but failed to include all of the limitations assessed therein in the RFC.

(3) The ALJ's "credibility" assessment is generally defective because of the above errors and specifically because she failed to consider Plaintiff's stellar work history in her analysis.

**Issue 1: Mental RFC**

Plaintiff argues that the ALJ relied on her "lay analysis" of the records related to Plaintiff's mental impairments in evaluating the paragraph B criteria[4] and formulating Plaintiff's

---

[4] Paragraph B criteria represent the areas of mental functioning needed in a work setting. "They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404, Subpart P, Appendix 1,

4

RFC. ([12] at 10). At the time Plaintiff filed for disability, she did not allege any mental impairments. ([11] at 63). Therefore, there was no review by a state agency psychological consultant at the initial determination level. Plaintiff claims that the ALJ was required to have the case reviewed by a qualified psychiatrist or psychologist so that they may offer a medical opinion on whether Plaintiff's depression and anxiety met or equaled a listed impairment at step 3. ([12] at 10). The Commissioner argues that the ALJ's decision as to Plaintiff's RFC is supported by substantial evidence. ([14] at 5-10).

In support of her assertion, Plaintiff cites to 42 U.S.C. § 421(h), SSR 96-6p, [5] and Program Operations Manual System Disability Insurance ("POMS DI") section 24515.056, which discuss medical equivalence to a Listing.[6] ([12] at 8). Plaintiff, however, has not argued that her mental impairments are equivalent to a Listing in her Memorandum [12]. *See* POMS DI 24515.056; *see also Cobb v. Barryhill*, 2017 WL 6492078, at *4 (N.D. Tex. Nov. 29, 2017)("To begin with SSR 96-6P and POMS DI 24515.056(E)(2) deal with the requirement of expert opinion evidence when an ALJ determines that an individual's impairments are not equivalent to any Listing."). As Plaintiff has not asserted that her mental impairments are equivalent to a listing, these references are inapplicable.

---

12.00(A)(2)(b). To satisfy the paragraph B criteria, a claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."

[5] SSR 96-6p was rescinded on March 27, 2017, prior to Plaintiff's alleged disability onset date and was not applicable at the time she applied for benefits. *See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html (last visited Dec. 28, 2021).

[6] The Social Security Administration maintains a list of impairments which are presumed severe enough to preclude gainful activity. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 (A). "If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(d), 416.920(d).

Plaintiff also cites to 42 U.S.C. § 421(h)., which speaks to the efforts the Commissioner must make in order to make an initial determination of disability when there is evidence of a mental impairment. The Commissioner must make "every reasonable effort" to have a "qualified psychiatrist or psychologist" complete the medical portion of the case review and complete a residual functional capacity assessment. However, this statute applies only to initial determinations by the agency and is inapplicable at the ALJ level. *See Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Rodgers v. Colvin*, 2016 WL 4432678, at *9 (D. Conn. Aug. 17, 2016); *McClure v. Astrue*, 2012 WL 5467761, at *6 (W.D. Pa. Nov. 9, 2012); *Dougherty v. Astrue*, 715 F.2d 572, 585-86 (D. De. 2010). ALJs are afforded greater flexibility when assessing a claimant's mental condition than permitted at the initial determination level. *See Plummer*, 186 F.3d at 433. An ALJ's duty to obtain a consultative examination is triggered only when the evidence presented is insufficient to make an informed decision. 20 C.F.R. §416.912; *Pierce v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). Here, the record was sufficient to make a determination, and therefore, no additional consultative examination was required.

The ALJ applied the correct legal standards and her opinion is supported by substantial evidence. Once the ALJ found that Plaintiff has a medically determinable mental impairment, she then rated the degree of functional limitation based on the extent to which the impairment interferes with the applicant's "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ identified the four broad functional

areas set forth in 20 C.F.R. § 404.1520a(c)(3)[7] and determined whether Plaintiff's degree of limitation was "none, mild, moderate, marked, [or] extreme" in each of the areas. *Id*.

The ALJ found that Plaintiff had a moderate limitation in "understanding, remembering, or applying information." To support her conclusion, the ALJ noted that Plaintiff drives a car, uses a cell phone, accompanies her daughter sometimes while shopping, washes clothes, is independent in her own personal care, and helps her autistic daughter dress appropriately and do her hair. ([11] at 18). The ALJ also identified that medical professionals throughout the records relied on her ability to follow medical instructions and take medications as prescribed. *Id*. ([11] at 18).

For "interacting with others," the ALJ found that Plaintiff had a mild limitation. Plaintiff testified at the hearing before the ALJ that she experienced social withdrawal. However, the ALJ remarked on Plaintiff's behavior and actions during the hearing, noting that she was able to subdue any anxiety in order to appear at the hearing, that she demonstrated adequate social and communication skills, and that Plaintiff was courteous and polite, had good eye contact, and displayed normal appearance. ([11] at 18). The ALJ found that the medical sources appeared to rely on Plaintiff's reports of symptoms and complaints and noted that she did not have any inclination toward violence or documented evidence of untoward social behavior during the period of alleged disability.

The ALJ found that Plaintiff had a moderate limitation in regard to "concentrating, persisting, and maintaining pace." The ALJ stated that while Plaintiff claimed to have mental impairments that restricted her ability to concentrate, she was able to concentrate throughout the

---

[7] These are "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

hearing and responded appropriately to all questions. The ALJ observed that Plaintiff did not display any distracted behavior during the hearing. The ALJ also pointed to the lack of evidence suggesting that Plaintiff has caused disruptions in her home life and suggested that the same could be inferred to apply to her behavior in a workplace. She also noted that treating sources relied on Plaintiff's representations regarding her medical history and symptoms, and that Plaintiff was compliant with medical treatment. ([11] at 19).

Finally, the ALJ found that Plaintiff had no limitation in "adapting and managing oneself." She again referenced Plaintiff's home life and caring for both herself and her autistic child and found that Plaintiff would be capable of adapting and managing herself in a workplace setting as well. The ALJ also noted that there is no evidence of unacceptable social behavior, no treating source noted she had unusual attire or a lack of hygiene, and there is nothing in the record to suggest that Plaintiff would not be able to avoid hazardous conditions or behaviors. The ALJ also noted that the medical professionals sought consent from Plaintiff before medical procedures, which indicates that they were also under the impression that she was able to understand the risks and nature of the procedure when explained.

Because the ALJ did not find that Plaintiff's mental impairment caused at least two "marked" limitations or one "extreme" limitation, she found that the "paragraph B" criteria were not satisfied. *Id*. The ALJ then determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she is limited to simple, routine, repetitive tasks. [11] at 20. In addition to the evidence outlined by the ALJ, on July 12, 2018, the agency considered Plaintiff's mental impairments and determined that they did not equate to a medically determinable impairment. ([11] at 98). Substantial evidence in the record supports this finding.

Plaintiff also claims that the ALJ erred by not giving the opinion of Dr. Singh, who Plaintiff describes as the "only psychiatrist of record to offer an opinion regarding Plaintiff's mental impairments," enough consideration when determining Plaintiff's RFC, and instead the ALJ "played doctor" by making generalizations about the record. ([12] at 11). The Commissioner argues that the ALJ was not required to mirror the opinion of the physician, and that her decision is supported by substantial evidence. The undersigned agrees.

"Determining residual functional capacity is the sole responsibility of the ALJ." *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). What Plaintiff claims to be lay interpretations and the ALJ "playing doctor" are instead the ALJ analyzing the evidence in the record to determine Plaintiff's residual functional capacity for work.

The main document Plaintiff uses to support her argument is a form titled "Treating Source Statement- Mental" filled out by Dr. Singh. ([11] at 963-66). The form contains a list of "mental abilities needed to work" and Dr. Singh checked a box next to the ability indicating his opinion on Plaintiff's own abilities in those areas. For the most part, Dr. Singh indicated that Plaintiff was able to "function satisfactorily, without any special accommodations." ([11] at 965-66). However, in ability to "[c]omplete a normal workday and workweek without interruptions from psychological based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods" and "travel in unfamiliar places" Dr. Singh indicated that Plaintiff "needs some help" and would require special accommodations. ([11] at 965-66).

Dr. Singh also represented his opinion on Plaintiff's "Mental Functioning" in several areas and found Plaintiff "limited but satisfactory (low moderate)" which indicates an ability to "function adequately" in most areas. ([11] at 966-68). However, Dr. Singh indicated that Plaintiff "needs some help (high moderate)" in the areas of "adapt[ing] or manage[ing] oneself" and

indicated that Plaintiff would require special accommodation in "managing psychologically based symptoms." ([11] at 966-68).

The ALJ considered Dr. Singh's opinion and found that it was "persuasive." The ALJ then used the levels of limitation opined by Dr. Singh and interpreted them to be "consistent with the ability to perform simple, routine repetitive tasks." ([11] at 27). Plenty of evidence in the records supports the ALJ's finding that Plaintiff has the mental ability to perform light work limited to simple, routine repetitive tasks. Plaintiff drives a car, does her own personal care as well as helps care for her autistic daughter, washes clothes, and uses a cell phone. Plaintiff has a history of complying with medical treatment and seeking treatment for medical issues. Dr. Singh stated that Plaintiff would be able to manage money in her own best interest and opined that Plaintiff was able to function adequately in almost all areas of mental functioning and mental abilities needed to work. ([11] at 969). As determining the residual functional capacity is responsibility of the ALJ, and substantial evidence supports her finding, the ALJ did not err in this area.

**Dr. Proli's Opinion**

Plaintiff also argues that the ALJ erred when she found the opinion of Dr. Joseph Proli, Plaintiff's treating cardiologist, persuasive, but did not include all of the Plaintiff's functional limitations in her assessment of Plaintiff's RFC. ([12] at 14). Particularly, Plaintiff identifies a "Treating Source Statement" filled out by Dr. Proli where he checked a box that Plaintiff would likely be absent from work "about two days per month." ([11] at 1011). The Commissioner argues that the ALJ considered Dr. Proli's opinion and adopted portions of it into the RFC finding, but was not required to mirror Dr. Proli's opinion in her RFC. ([14] at 10-12).

10

In 2017, the Social Security Administration revised its regulations regarding the evaluation of medical evidence. These revised regulations are applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520b. Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised regulations.

Under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[8] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors but need not explain how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ stated in relevant part:

"Dr. Proli in Exhibit 21F determined that the claimant was limited to sitting at least 6 hours during an 8-hour working day, standing/walking at least 6 hours during an 8-hour working day, did not need a job that permitted shifting positions at will from sitting, standing or walking, that she would sometimes need to take unscheduled breaks during an 8-hour working day if having chest pain, did not need to elevate legs with prolonged sitting, was limited to lifting and carrying 30 pounds and 50 pounds or more occasionally and 20 pounds or less frequently, and could stoop and crouch a third of an 8-hour working day. This opinion is deemed persuasive, as it is consistent with a functional ability to perform light exertion involving only simple, routine, repetitive tasks. It is noted that the medical evidence reflects only occasional episodes of chest pain, which indicates that the need for unscheduled breaks would not be a regular/frequent occurrence.

---

[8] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

([11] at 27). The ALJ's analysis of Dr. Proli's opinion is generally in line with the requirements of 20 C.F.R. § 404.1520c(b)(2), and she found that his opinions were consistent with her RFC finding and that his opinion was "persuasive." She also stated why his opinion that Plaintiff would have to take unscheduled breaks during the workday was not persuasive or supported by the medical evidence.

However, in addition to his opinion that Plaintiff would have to take unscheduled breaks throughout the workday, Dr. Proli opined that Plaintiff would be absent from work an average of two days per month. ([11] at 26). The ALJ acknowledged this limitation earlier in her decision but did not address the persuasiveness or supportability on this issue when determining the RFC and completing the analysis required by 20 C.F.R. § 404.1520c(b)(2). ([11] at 26). The ALJ was required to "articulate in [the] determination or decision how persuasive" she found "all of the medical opinions." 20 C.F.R. § 404.1520c(a); *see also Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at *3 (S.D. Miss. Feb. 26, 2021).

While it could be argued that the ALJ rejected Dr. Proli's opinion on this issue by implication by concluding that Plaintiff would be able to perform jobs that exist in significant numbers in the national economy, she did not address the persuasiveness of this opinion in her RFC. The ALJ was first required to "articulate in [the] determination or decision how persuasive" she found "all of the medical opinions." 20 C.F.R. § 404.1520c(a); *see also Moore*, 2021 WL 754833, at *3 (remanding the matter to the Commissioner upon finding that the ALJ's did not explain the supportability or consistency of a physician's opinion that the claimant could lift no more than five pounds, when that limitation would result in disability). The only portion of Dr. Proli's opinion that the ALJ stated she found unpersuasive is his opinion on her need for unscheduled breaks. The ALJ did not explain why she was not persuaded or why she found the

12

opinion unsupported or inconsistent on the issue of being absent from work an average of two days per month. The ALJ's failure to evaluate the supportability or consistency as to this portion of Dr. Proli's medical opinion is error.

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.... The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (per curiam). "[P]rocedural improprieties ... will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The ALJ's error is harmless if the substantial rights of a party have not been affected. *See Alexander*, 412 F. App's at 722; *see also Audler*, 501 F.3d at 448 (applying harmless error analysis to the ALJ's failure to state any reason for her adverse determination at step three).

The ALJ's error here is not harmless. At the hearing, counsel for Plaintiff asked as follows:

> COUNSEL: And if this individual misses two or more days of work a month, due to the physical or mental impairments, are there any jobs available for this person?
>
> VOCATIONAL EXPERT: I don't believe that would allow for long-term job retention.

([11] at 58).

Dr. Proli's opinion that Plaintiff would have to miss two days of work per month on average, if found persuasive by the ALJ, would not allow for long-term job retention. *Id*. The ALJ needed to evaluate the persuasiveness of his opinion and support her reasoning with the

13

supportability and consistency factors. *See* 20 C.F.R. § 404.1520c(a); *see also Moore,* 2021 WL 754833, at *3. Accordingly, the undersigned recommends that this case be remanded to the Commissioner for additional proceedings and the analysis required by 20 C.F.R. § 404.1520c(b)(2) as to Dr. Proli's opinion that Plaintiff would be absent from work for two days per month on average.

**Plaintiff's Work History**

Although Plaintiff acknowledges that courts afford deference to an ALJ's credibility determination, Plaintiff argues that the ALJ erred by not considering the Plaintiff's "stellar" work history when determining Plaintiff's credibility. ([12] at 16-19). The Commissioner argues that a Plaintiff's work history is just one factor that the ALJ considers when determining credibility and that no error was committed by not specifically addressing Plaintiff's work history in her decision. ([14] at 12-13).

Within the Fifth Circuit, the work history of a claimant "is but one factor to consider when evaluating plaintiff's symptoms." *McGee . Astrue*, 2012 WL 7456174, at *8 (W.D. La. Nov. 26, 2012*), report and recommendations adopted*, 2013 WL 704624 (W.D. La. Feb. 26, 2013); *see also Crain v. Colvin*, 2016 WL 4471662, at *6 (S.D. Miss. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4471882 (S.D. Miss. Aug. 24, 2016); *Wetzel v. Berryhill*, 2018 WL 4664139 at *8-10 (N.D. Tex. Sept. 28, 2018); *Bradshaw v. Saul*, 2019 WL 7461703 at *3 (N.D. Tex. Dec. 12, 2019). The agency policies referenced by Plaintiff do not mandate that a claimant's work history be given any special significance. *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

The ALJ asked Plaintiff about her work history during the hearing and provided a description of all the jobs she has held since 2000. ([11] at 45-47). The ALJ was therefore aware

of Plaintiff's work history at the time of her decision. However, the ALJ determined that the subjective evidence and testimony from Plaintiff that claimed she was disabled contradicted the objective medical evidence in the record and gave sufficient reasons for her findings. The ALJ was not required to provide special significance for Plaintiff's work history and did not err in this regard.

For the reasons previously stated, the undersigned recommends remand to provide analysis on the supportability and consistency of Dr. Proli's opinion that Plaintiff would be absent from work on average of two or more days per month. Plaintiff's request for relief on all other grounds should be denied.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that:

1. Defendant's Motion for an Order Affirming the Decision of the Commissioner [13] be GRANTED in part and DENIED in part.

2. This action be remanded to the Commissioner for further administrative proceedings consistent with the order of this Court.

3. All other relief requested by Plaintiff be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party,

except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This the 11th day of January, 2022.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE
